IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                    *
PATRICIA MITCHELL TRACEY, et al.,
                                    *
        Plaintiffs,
                                    *
        v.
                                    *       CIVIL NO.: WDQ-12-1329
FIRST AMERICAN TITLE INS. CO.
                                    *
        Defendant.
                                    *
```

*       *       *       *       *       *       *       *       *       *       *       *       *

MEMORANDUM OPINION

Patricia Mitchell Tracey and Larry Austin (collectively,
the "Plaintiffs"), on behalf of themselves and others similarly
situated, sued First American Title Ins. Co. ("First American")[1]
for Racketeer Influenced and Corrupt Organizations Act ("RICO")
violations, 18 U.S.C. § 1962, and other claims.  Pending is
First American's supplemental motion to dismiss the Plaintiffs'
claim for money had and received.  For the following reasons,
the motion will be denied.

---

[1] The Plaintiffs also sued United General Title Ins. Co. ("United
General"), which is no longer a party.  ECF Nos. 5, 27; see
infra note 3.

I. Background[2]

This case arises out of title insurers United General and First American's alleged scheme to systematically "cheat" Maryland homeowners by charging premiums for title insurance in excess of the rates permitted by Maryland law. Compl. ¶ 1.[3] Specifically, instead of charging and collecting the 40% discounted premium--filed with and approved by the Maryland Insurance Administration (the "MIA")[4]--for purchasers of title insurance who refinanced their mortgages within 10 years of a previously issued title insurance policy (the "reissue rate"), First American collected the higher basic rate. *Id.* ¶¶ 3, 23-24. First American split the excess premiums with the local title company (the "insurance producers," or "agents") that had procured the policies on its behalf. *Id.* ¶¶ 2-3, 17-18, 25.

---

[2] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

[3] On February 18, 2005, United General was merged into First American when First American acquired United General's parent company, United General Financial Services, Inc. Compl. ¶ 10; *see also* ECF No. 5 at 1. In the merger, First American "assumed all of the rights and liabilities of United General." ECF No. 5 at 1.

[4] Under the Maryland Insurance Code, a title insurer must (1) "file with the Commissioner all rates or premiums . . . that it proposes to use"; and (2) "hold to the rates or premiums as approved by the Commissioner." Md. Code Ann., Ins. §§ 11-403(a), 11-407(b); *see also* § 27-216(b)(1) ("A person may not willfully collect a premium or charge for insurance that: (i) exceeds . . . [the] rates as filed with and approved by the Commissioner . . . ").

Mitchell Tracey and Austin were charged allegedly unlawful premiums in connection with their respective March 1, 2005 and June 16, 2008 home refinancings. *Id.* ¶¶ 29-35, 41-47.

On April 30, 2012, the Plaintiffs filed this suit[5] against United General and First American for RICO violations and other claims. ECF No. 1.[6] On May 25, 2012, United General and First American moved to dismiss. ECF No. 3. The Plaintiffs opposed the motion, and a reply followed. ECF Nos. 20, 22. On March 28, 2013, the Court denied the motion to dismiss, and directed the parties to submit supplemental briefing on the viability of the Plaintiffs' money had and received claim after *Bourgeois v. Live Nation Entertainment, Inc.*, 59 A.3d 509 (Md. 2013).[7] ECF No. 29. On April 11, 2013, First American filed a supplemental motion to dismiss the money had and received claim, which the Plaintiffs have opposed. ECF Nos. 31, 33.

---

[5] For a more detailed factual background and procedural history, see ECF No. 28.

[6] The complaint alleged six causes of action:
   (1) Money had and received (Count One);
   (2) Negligence (Count Two);
   (3) Breach of contract (Count Three);
   (4) Investment of proceeds of racketeering activity, in violation of 18 U.S.C. § 1692(a) (Count Four);
   (5) Conducting or participating in a RICO enterprise, in violation of § 1692(c) (Count Five); and
   (6) Conspiracy to violate RICO, in violation of § 1692(d) (Count Six).

[7] *Bourgeois* was decided after the motion to dismiss had been fully briefed.

II. Analysis

A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must

4

not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. *Bourgeois v. Live Nation Entertainment, Inc.*

Andre Bourgeois, on behalf of himself and others similarly situated, filed suit against Live Nation Entertainment, Inc. ("Live Nation") and others in the Circuit Court for Baltimore City, Maryland, alleging that the defendants had violated the Baltimore City Code by collecting excessive "service charges" for tickets to entertainment events in Baltimore City. *Andre Bourgeois v. Live Nation Entm't, Inc., et al.*, No. 24-C-11007328 (Cir. Ct. for Balt. City, Md., filed Nov. 22, 2011), Compl. ¶ 2. Bourgeois's complaint included a claim for money had and received. *Id.* ¶¶ 83-90. After the case was removed, the defendants moved to dismiss; Bourgeois moved to certify three questions of law about the Baltimore City Code to the Maryland Court of Appeals. No. ELH-12-0058, ECF Nos. 18, 19, 21, 25. Judge Hollander denied the defendants' motions to dismiss

without prejudice,[8] granted Bourgeois's motion to certify, and added a fourth certified question *sua sponte*:

> 4. Does Maryland recognize a common-law cause of action for money had and received and, if so, may a claim for money had and received be maintained to recover money collected in violation of the . . . Baltimore City ordinances?

*Bourgeois v. Live Nation Entm't, Inc.*, No. ELH-12-0058, 2012 WL 2234363, at *1-2, *9-10 (D. Md. June 14, 2012).

The Maryland Court of Appeals answered the certified questions in a January 18, 2013 opinion. *Bourgeois v. Live Nation Entm't, Inc.*, 59 A.3d 509 (Md. 2013). As to Question Four, the court began by recognizing that actions for money had and received--although "well-established" in Maryland--are limited to cases where money was paid (1) under mistake of fact or law, (2) by fraud or false pretenses, (3) upon an *unexecuted* (i.e., executory) illegal contract, or (4) in "certain circum-stances," under an executed (i.e., nonexecutory) illegal contract. *Id.* at 528, 529. Recovery of money paid under an executory contract is permitted to "'encourage[] . . . the abandonment of illegal contracts and to prevent a violation of the law;'" recovery is "'not under, but independently of the contract.'" *Id.* at 529 (*quoting Harrington v. Bochenski*, 116 A. 836, 839 (1922)). By contrast, when the contract is fully executed, the parties "*ordinarily* are *in pari delicto* [equally

---

[8] No. ELH-12-0058, ECF No. 49.

6

at fault[9]] and neither should be able to take advantage of the illegality." *Id.* (emphasis in original). As a matter of law, parties are not *in pari delicto* when the illegality is the exaction of usurious interest. *Id.* at 529-30.

"Based on these long-established common law distinctions and limitations," the Court of Appeals concluded that,

> Maryland continues to recognize a common law action for money had and received. Unless otherwise precluded by statute, such an action will lie to recover money paid in excess of that allowed by statute, including the Baltimore City ordinances, if the agreement pursuant to which it was paid has not been fully consummated, *i.e.*, remains executory. **Except with respect to a usurious contract, however, the action does not lie to recover money paid under a fully consummated contract as to which the parties may be regarded as being *in pari delicto*.**

59 A.3d at 530-31 (bold emphasis added).[10]

C. The Merits

The Plaintiffs allege that their title insurance premiums were collected under illegal--and thus void--agreements. *See* Compl. ¶¶ 1, 84-86. First American argues that, because the relevant contracts were "fully executed and complete," the Plaintiffs' money had and received claim is "precisely the type prohibited by *Bourgeois*." ECF No. 31 at 2. The Plaintiffs

---

[9] *Black's Law Dictionary* 862 (9th ed. 2009).

[10] After the Court of Appeals's decision in *Bourgeois*, Judge Hollander ordered the defendants to refile their motions to dismiss on or before April 12, 2013. No. ELH-12-0058, ECF No. 57. Briefing on the refiled motions will be completed by June 10, 2013. *See id.*, docket.

contend that "the circumstances . . . place greater culpability"
on First American, rendering the claim viable "without regard to
whether the contract[s] [are] executory or completed." ECF No.
33 at 3, 7.

As the Plaintiffs apparently concede, there is no question
that the contracts between them and First American are fully
executed: the allegedly unlawful premiums having been charged
to--and collected from--Mitchell Tracey and Austin in connection
with 2005 and 2008 title insurance policies. Compl. ¶¶ 29-35,
41-47; *see id.* ¶ 4 (defining the class as "Maryland consumers
whose property had, within the previous 10-years, a validly
issued title insurance policy--entitling them to a 40% discount
off the premium for newly issued title insurance policies by
United General and/or First American--but who did not receive
any such discount").[11] There is no allegation that the relevant
contracts exacted usurious interest. Accordingly, the
Plaintiffs' claim for money had and received must fail unless
other "special circumstances" preclude a finding that the
parties were *in pari delicto*. *Bourgeois*, 59 A.3d at 530.

"The common-law defense of *in pari delicto* prohibits a
party from recovering damages arising from misconduct for which

---

[11] *See also Black's Law Dictionary* 369 (9th ed. 2009) (an
"executory contract" is "[a] contract that remains wholly
unperformed or for which there remains something still to be
done on both sides, often as a component of a larger
transaction").

the party bears responsibility [or] fault, or which resulted from his or her wrongdoing." *Catler v. Arent Fox, LLP*, Nos. 538, Sept. Term, 2011, 2349, 2013 WL 2360961, at *18 (Md. Ct. Spec. App. May 30, 2013) (internal quotation marks omitted). In applying the doctrine, "a distinction is maintained between those cases in which one of the parties has by an illegal act taken an advantage of and oppressed the other, and those in which it is not possible to distinguish between the parties as to the degree of their criminality." *Rickards v. Rickards*, 56 A. 397, 397 (Md. 1903). Thus, recovery is available for money had and received "whe[n] the law that creates the illegality in the transaction was designed for the coercion of one party and the protection of the other, or whe[n] the one party is the principal offender and the other only criminal from a constrained acquiescence in such illegal conduct." *Thomas v. City of Richmond*, 79 U.S. (12 Wall.) 349, 355 (1871).[12]

Here, the Plaintiffs have alleged that they were overcharged for title insurance policies underwritten by First American and/or United General, in violation of Md. Code Ann., Ins. § 27-216(b)(1). *See, e.g.*, Compl. ¶¶ 90-91, 96. The purpose of Title 27 is "to regulate trade practices in the

---

[12] *See also Messick v. Smith*, 69 A.2d 478, 481 (Md. 1949) ("When the plaintiff is one of a class for whose protection or benefit the statute was enacted, he may be regarded as not *in pari delicto*.").

business of insurance . . . by defining . . . all trade practices in the business of insurance in the State that are unfair methods of competition or unfair or deceptive acts or practices and by prohibiting those trade practices." Md. Code Ann., Ins. § 27-101. The Plaintiffs, as insurance purchasers, were allegedly subjected to unfair trade practices by the defendant insurance company, and are thus within the class of persons for whose protection or benefit the statute was enacted. *See id.* Further, the Plaintiffs' "participation" in the overcharges was limited to their signatures on the HUD-1 Settlement Statements, which stated the charged and collected premium amounts. Compl. ¶¶ 32, 44. Drawing all reasonable inferences in the Plaintiffs' favor, these circumstances preclude a finding that the parties were *in pari delicto. See Bourgeois*, 59 A.3d at 530.

III. Conclusion

For the reasons stated above, First American's supplemental motion to dismiss will be denied.

_6/12/13_
Date

William D. Quarles, Jr.
United States District Judge

10